UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON, MASSACHUSETTS

|  |  |
|---|---|
| | )Civil Action: 05-10645 RCL |
| MARCIO H. JACOB | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CHERTOFF | ) |
| Secretary,U.S. Department | ) |
| of Homeland Security; | ) |
| EDUARDO AGUIRRE, JR. | ) |
| Director, U.S. Citizenship | ) |
| And Immigration Services, | ) |
| DENIS RIORDAN, Boston District | ) |
| Director, U.S. Citizenship | ) |
| and Immigration Services | ) |
| Defendants | ) |
| _____ | ) |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The Plaintiff Marcio H. Jacob (the "Plaintiff"), by
and through his undersigned attorney, hereby submits his
opposition to the Defendants', Michael Chertoff, Secretary,
U.S. Department of Homeland Security; Eduardo Aguirre, Jr.,
Director, U.S.Citizenship and Immigration Services ("INS"),
Denis Riordan, Boston District Director, INS (collectively,
the "Defendants" or the "Government") Motion to Dismiss or
in the Alternative for Summary Judgment ("Defendants'

Motion"). In support thereof, the Plaintiff states as follows.

## FACTS AND PROCEEDINGS

The Plaintiff brings this suit to compel INS to adjudicate his permanent resident application (I-485) (the Application"), which he filed on April 13, 2002.[1] Complaint, ¶10. INS interviewed the Plaintiff regarding the Application on October 21, 2004[2], but made no decision on the Application because the interviewing officer stated that she needed to investigate a speeding ticket that the Plaintiff testified he had received. Complaint,¶14. Since then, INS has failed to adjudicate the Application and has completely ignored the Plaintiffs repeated oral and written status inquiries. Complaint,¶16. Accordingly, the Plaintiff has no other alternative but to bring the present action whereby he asks the court to compel the Defendants to perform their duty and adjudicate his Application.

## GOVERNMENT'S ARGUMENT

In moving to dismiss the Plaintiff's claim, the Government contends that the adjudication of an I-485 Application is a discretionary act, and, therefore, mandamus jurisdiction is not proper. Secondly, it claims

---

[1] 8 U.S.C. §1255 allows an alien to seek adjustment of immigration status to that of a legal permanent resident ("LPR" ) of the United States.
[2] Pursuant to  8 C.F.R. §245.6  "each applicant for adjustment of status under §1255 shall be interviewed by an immigration officer".

that the Administrative Procedures Act ("APA") does not vest the Court with jurisdiction because the prolonged processing delays involved in the case are reasonable.  In its last attempt to dismiss the Complaint, the Government contends that even if the Court exercises its jurisdiction in the matter, it is entitled to summary judgment because the lengthy three and a half year delay in processing the Application does not constitute a violation of the APA as a matter of law.

<u>ARGUMENT</u>

<u>I. THIS COURT HAS JURISDICTION TO HEAR
PLAINTIFFS' CLAIMS.</u>

The Plaintiff's Compliant alleges that the Court has subject matter jurisdiction to hear his claims under the Mandamus Statute, 28 U.S.C. § 1361, 28 U.S.C. §§1331 and 5 U.S.C. 551 *et seq.* (APA).  Each of these statutes confer jurisdiction upon this court.

Federal courts are courts of limited jurisdiction, deriving their authority from both constitutional and legislative sources.  28 U.S.C. §1331.  It is exclusively the power of Congress to restrict the jurisdiction of federal courts to adjudicate certain types of cases.  <u>Keene Corp. v. U.S.</u>, 508 U.S. 200, 207, 113 S.Ct. 2035(1993). Federal courts will not infer congressional intent to

restrict their jurisdiction.  <u>Block Community Nutrition
Institute</u>, 467 U.S. 340, 104 S.Ct. 2450 (1984).  The
presumption in favor of judicial review may only be
rebutted by a showing of clear and convincing evidence that
Congress intended to preclude judicial review.  <u>Board of
Governors of the Federal Reserve System v. McCorp Financial
Inc</u>., 502 U.S. 32, 44, 112 S.Ct. 459 (1991). As detailed
below, applying these judicial tenets to the case at bar
reveals that the court has subject matter jurisdiction over
the present matter.

**A. Mandamus Jurisdiction is Proper in the Present Case**

United States District Courts have mandamus
jurisdiction to "compel an officer or employee of the
United States .. . to perform a duty owed to the Plaintiff.
28 U.S.C. §1361.  Mandamus jurisdiction is properly invoked
when:  (1) the plaintiff has a clear right to the relief
sought; (2) the defendant has a clear duty to perform; and
(3) no other adequate remedy is available." <u>Heckler v.
Ringer</u>, 466 U.S. 602, 104 S.Ct. 2013(1984).  As
demonstrated below, the Plaintiff has adequately plead all
three of these requirements.

*1. There is a Clear Right to the Relief Sought*

In the present case, the Plaintiff seeks mandamus to
compel INS to adjudicate the application to adjust his

status to that of a permanent resident (I-485)(the
"Application") as provided for in 8 U.S.C. §1255.

Although the Plaintiff was unable to locate any
decisions from the First Circuit, other Federal Courts that
have dealt with the issue have consistently held that, for
mandamus jurisdictional purposes, 8 U.S.C. §1255 entitles
an applicant for permanent residence a right to
adjudication.  Paunescu v. INS, 76 F.Supp.2d 896 (N.D.Ill.
1999)(holding that court had mandamus jurisdiction when INS
failed to adjudicate an I-485 Application); Agbemaple v.
INS 1998 WL 292441(N.D.Ill. 1998)(holding mandamus
jurisdiction proper when the plaintiff sought to compel an
adjudication of an I-485 application after a year had
transpired since the INS interviewed him on the
application)(N.D. Ill.1998); Jaffer v. Reno, 2000 WL 866522
(C.D.Cal.2000)(recognizing that § 1255 provides for a right
to adjudication of I-485 Application); *accord*
Setharatsomphou v. Reno, 1999 WL 755292 (N.D.Ill. Sept. 27,
1999)(stating that a petitioner has a right to adjudication
of his I-485 application); Yu v. Brown, 36 F.Supp. 2d 922
(D.N.M. 1999)(holding that the federal regulation
promulgated under §1255 makes it clear that INS has a non-
discretionary duty to act on I-485 applications); Nadlar v.
INS 737 F.Supp. 658, 659 (D.D.C. 1989)(awarding attorneys

fees under the Equal Access for Justice Act after the
Plaintiff prevailed in a mandamus action that sought to
compel the INS to adjudicate his I-485 Application).

Based on the forgoing, the Plaintiff has satisfied the
first requirement for mandamus.

> 2. *The Government Has a Clearly Defined Duty to
>    Process the Application in a Reasonable Time.*

Although §1255 does not specify a time by which INS
must issue a decision, it is well-established that the
government has a duty to adjudicate §1255 within a
reasonable time.  <u>Panunascu</u>, *supra*, 76 F.Supp. 2d at
901("government has a non-discretionary duty to issue a
decision on Plaintiffs' application within a reasonable
time") <u>Agbemaple v. I.N.S.</u>, 1998 WL 2924411 (holding that
adjudication of applications under §1255 must occur within
a reasonable time) <u>Jaffer v. Reno</u>, 2000 WL 866522
(C.D.Cal.2000)(noting the same) <u>Setharatsomphou v. Reno</u>,
1999 WL 755292 (N.D.Ill. Sept. 27, 1999**;** <u>Yu v. Brown</u>, 36
F.Supp. 2d 922 (D.N.M. 1999)(establishing that INS had a
non-discretionary duty to process special immigrant
juvenile applications, even though INS had discretion in
the ultimate decision whether to grant permanent status).

For instance, in <u>Agbemaple</u>, <u>supra</u>, 1998 WL 292441, the
court found mandamus jurisdiction in similar circumstances.

There, the plaintiff brought a mandamus action to compel INS to adjudicate his I-485 Application.  The application had been filed two (2) years prior to the filing of the complaint and was still pending a year after INS conducted the interview.  In finding that mandamus jurisdiction was proper the court noted that "a contrary position, would permit the INS to delay indefinitely.  Congress could not have intended to authorize potentially interminable delays" 1998 WL 292441 *2.

Similarly, in <u>Yu v. Brown</u>[3], mandamus jurisdiction was found when the plaintiff sought to compel the INS by mandamus to adjudicate her application for adjustment, which had been pending for a year.  The court determined mandamus was an appropriate remedy because the Government had a clearly defined duty to process the I-485 application in a reasonable time.

The logic underlying the above-cited cases must be extended to the present case.  To hold otherwise, would essentially grant the Government a license to shirk its responsibilities under 8 U.S.C. §1255.

C. *There is No Adequate Remedy Available*

The Plaintiffs have exhausted all of their administrative remedies in that there is no administrative

---

[3] <u>supra</u>, 36 F.Supp.2d 922.

remedy for the Government's inaction.   This is not a case
where there was a denial of his application where he would
have had to follow administrative steps to appeal said
decision.   The Government has simply failed to take action
and has ignored repeated requests to adjudicate the matter.
In this situation, "mandamus is the only available remedy
that is sufficiently flexible to afford the Court the
opportunity to rectify government neglect and
dilatoriness."   Harriott v. Ashcroft, 277 Supp.2d 538, 545
(E.D.Pa. 2003)(exercising mandamus jurisdiction when
plaintiff sought adjudication of an application for
derivative citizenship).

### D. Government's Supporting Cases are Clearly Distinguishable

In support of its argument, the Government cites to
Checkman v. McElroy, 313 F.Supp.2d 270 (S.D.N.Y. 2004);
Sadowski v. INS, 107 F.Supp.2d 451 (S.D.N.Y. 2000); Wan
Shih Hsieh v. Kiley, 569 F.2d 1179 (C.A.N.Y. 1978).   Its
reliance on these cases is misplaced.   The cases arise from
different sections of the INA, which, arguably, grant INS
discretion to perform the act specified in the respective

sections.[4]  In the present case, long-standing case law

holds that the Government has a non-discretionary duty to

adjudicate applications under §1255. *See supra* at pp 6-7.

The only case the Government cites that remotely

supports its argument is <u>Saleh v. Ridge</u>, which involved a

Plaintiff seeking to compel INS to adjudicate his I-485

Application.  The relevant application had been pending

before the agency for several years.  The <u>Saleh</u> court

refused to exercise mandamus jurisdiction because it found

that the government had no clear, non-discretionary duty to

adjudicate adjustment applications.  In support of its

holding, the court cited to only one case; <u>Vladagina v.</u>

---

[4] In <u>Checkman v. McElroy</u>, the Plaintiff sought a writ of mandamus to
compel INS to place him in removal proceedings.  The court ruled that
IRIRIA §309(c)(3), which is the governing statute regarding removal
proceedings, conferred complete discretion on the Attorney General
regarding whether to place a person in removal proceedings.  <u>Id</u>. At
274.  Accordingly, the Court ruled that mandamus jurisdiction was
improper because the statute involved a discretionary act.

In <u>Sadowski v. INS</u>, 107 F.Supp.2d 451 (S.D.N.Y. 2000), INS had
denied the Plaintiff's I-485 application.  The Plaintiff then sought a
writ of mandamus to protect him from INS purported failure to act in a
timely manner on his adjustment of status.  The court dismissed the
case for lack of jurisdiction.  Its holding, however, was predicated on
8 U.S.C.1252(a)(2)(B), which specifically bars judicial review of a
§1255 application denial.  The present case does not seek review of the
Government's denial of the adjustment of status.  It seeks just the
opposite; an order requiring the Government to process the plaintiff's
application.  Surely, the Government cannot insulate itself from
liability for taking no action.

<u>Wan Shih Hsieh v. Kiley</u>, 569 F.2d 1179, involved a legal
permanent resident seeking to compel an overseas consulate, who was
employed by the DOS, to issue visas for her children.  The court held
it did not have mandamus jurisdiction over INS because INS had no duty
to conduct an investigation as to whether a visa should be issued to
aliens overseas by the State Department.

Ashcroft, No. 00 Civ. 9456 (DAB), 2002 WL 1162426 at 4
(S.D.N.Y. April 8, 2002).

The Vladagina case, however, arose from a denial of an
adjustment application and the plaintiff sought mandamus to
compel the government to act favorably on the application.
Under these circumstances, the court held that mandamus was
inappropriate because the government had denied the
application.  The underlying rationale of the decision is
that §1255 grants the government discretion in the ultimate
decision as to who is granted an adjustment of status.

Saleh, however, involved the government failing to
adjudicate an application; therefore, Vladagnina is
incorrectly cited as a basis of the decision. Accordingly,
the logic in the Saleh is fatally flawed and ignores long-
standing case law that finds that the government has a non-
discretionary duty to adjudicate adjustment applications
under §1255.  Based on the foregoing, it should not be
relied on as the basis for the Court's decision.

**B.  *Jurisdiction is Proper Under the APA***

Subject matter jurisdiction in this matter is also proper
pursuant to the federal question statute, 8 U.S.C. §1331,
and the APA. 5 U.S.C. §551 *et seq*. Despite the argument of
Defendants to the contrary, the cases cited in their Motion
effectively compel this conclusion.

The APA provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. Among the agency actions subject to review is "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). While the APA does not independently grant subject matter jurisdiction, the general federal question statute provides that a federal district court shall have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. The interaction of these statues grants a court jurisdiction to review any agency action that is "unlawfully withheld or unreasonably delayed". Bartolini v. Ashcroft, 226 F.Supp.2d 350, 353-54 (D. Conn. 2002).

The courts that have considered this issue have uniformly held that the federal question statute and the APA can grant a district court subject matter jurisdiction to compel an agency action that is unreasonably delayed. See Alkenani v. Barrows, 336 F.Supp.2d 652 (N.D. Texas 2005); Yu, 36 F.Supp.2d at 922. These courts have held that jurisdiction is proper in those situations where the plaintiff's claim is not "patently without merit". Bartolini 226 F.Supp.2d at 354 (D. Conn. 2002). "The test

for determining whether a claim is 'patently without merit'
is 'whether the right claimed is so insubstantial,
implausible, foreclosed by prior decisions of [the Supreme]
Court, or otherwise completely devoid of merit as not to
involve a federal controversy.'" Id. (quoting New York
Dist. Attorney Investigators Police Benevolent Ass'n, Inc.
v. Richards, 711 F.2d 8, 10 (2nd Cir. 1983)). The instant
case does not present such a situation.

In their Motion to Dismiss, the Defendants argue that
plaintiff's claim is patently without merit because "any
delay in processing of plaintiff's I-485 application is not
the result of any inaction or unreasonableness on the part
of defendants." See Defendants' Motion at 7. "In this case,
the immigrant visa that was obtained by Plaintiff was based
upon a labor certification issued by the Department of
Labor, the bases of which has been called into question,
and which USCIS is now investigating." Id. "Only when that
investigation is resolved . . . would the Court have
jurisdiction under the APA to determine whether Defendants
have unlawfully withheld or unreasonably delayed the
adjudication of plaintiff's I-485 application." Id.  The
Defendants' argument is not supported by the facts of this
case, and is contrary to the case law that has developed in
regard to the APA.

In the view of the Defendants, it appears that *any* delay would be acceptable, as long as it was cloaked under the auspices of an "investigation". However, the Defendants have failed to provide any explanation as to how the "bases" of the plaintiff's immigrant visa have been "called into question", other than to repeatedly make this vague assertion. Rather than further illuminating the circumstances surrounding this "investigation", District Director Riordan's declaration makes the equally opaque assertion that "an issue has arisen" as to the plaintiff's work experience. While Director Riordan asserts that USCIS is attempting to "investigate" this question "through diplomatic channels", there is absolutely no explanation as to what has prompted USCIS to take this action.

Clearly, if the Defendants take the position that their delay in adjudicating this application is reasonable under the circumstances, they must provide some explanation as to *what these circumstances are*. They cannot merely assert that they are "investigating" a case without any detail as to what has prompted the investigation. To hold otherwise would essentially eliminate any judicial review of delayed agency action – the government could assert that *any* case has been "called into question" and requires "investigation" before a decision can be rendered. The

- 13 -

government would, effectively, have an "all-purpose" excuse to avoid review of *any* delay in adjudicating applications. This is clearly not what Congress intended when it enacted the APA to protect parties against capricious agency action (or inaction). "[C]ourts have uniformly concluded that 'when an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect, judicial review . . . is in order.'" Yu, 36 F.Supp.2d. at 929 (*quoting* In re Amer. Feder. Of Gov. Employees, AFL-CIO, 790 F.2d 116, 177) (D.C. Cir. 1986)).

Furthermore, the Defendants' arguments are fatally undermined by the circumstances of this case. The immigrant visa petition at issue in this proceeding was approved by USCIS on February 25, 2002 - almost 3½ years ago. It is unclear what has suddenly caused USICS to "investigate" a petition that was approved in early 2002. While the Defendants assert that "an issue has arisen" in regard to the petition, it is left unstated what this "issue" is, and when it "arose" to necessitate an investigation.

Additionally, Director Riordan's declaration reveals (tellingly) that USCIS *did not even begin* to undertake this investigation until March 10, 2005 – *after* Counsel for USCIS had been informed (on or about February 28, 2005)

that plaintiff intended to initiate the instant litigation.[5]
How reasonable is the Defendants' explanation that this
application has been delayed by the need for an
investigation, when the "investigation" in question was not
even started until it was clear that litigation was
imminent? Despite the contention of the Defendants, the
only conclusion that can be drawn is that this application
has been delayed by the inaction and unreasonableness of
the Defendants.

Additionally, the cases cited by the Defendants in
support of their Motion fail to serve this purpose. The
defendants rely on Danilov v. Aguirre, 370 F.Supp.2d 441
(E.D. Va. 2005), in support of their contention that the
Court lacks subject matter jurisdiction in this proceeding.
However, Danilov is clearly distinguishable from the case
at hand. Danilov involved an application for naturalization
that was unadjudicated for a lengthy period of time because
of a delay in completing a required Federal Bureau of
Investigation "background check". Id. at 442. This
"background check" *must* be completed, pursuant to statute,
before any naturalization application can be approved. See
Public Law 105-119, Title I, Nov. 26, 1997,

---

[5] See attached letter, dated February 28, 2005, to Henry Hanley, District Counsel for USCIS Boston.

111 Stat. 2448.[6] The Danilov court held that jurisdiction was not proper in that proceeding because the delay in adjudicating the naturalization application was solely a result of the delay in the FBI's completion of the statutorily required background check. "[A]ny delay in the processing of plaintiff's naturalization application was not the result of any inaction or unreasonableness on the part of governing agency; instead, it was the result of the legal requirement that CIS await receipt of the FBI's completed criminal background investigation before acting on plaintiff's application." Danilov, 370 F.Supp.2d at 444.

The Defendants' reliance on Danilov is misplaced. Danilov clearly was decided based on a very specific factual situation – USCIS was unable to decide the naturalization application because they had not received the results of an FBI criminal background investigation that was mandated by Congress before adjudication. There is no such factor in the instant case – all of the required FBI criminal background checks in regard to plaintiff's

---

[6] The statute in question provides that:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except those exempted by regulation as off January 1, 1997. Public Law 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448

application have apparently been completed, and the
defendants are not bound by any Congressional mandate that
they perform any further investigation in regard to the
application. Any "investigation" that is being conducted by
the defendants is being done solely at the whim of the
defendants, and they are under no statutory requirement
that the investigation be completed before adjudication.
Furthermore, the CIS in Danilov was not conducting their
own investigation into the application – they were awaiting
routine criminal background checks from the FBI. The
Defendants in the instant case have complete control over
all activity in adjudication of this application – any
delay is solely their responsibility.

In conclusion, this court is clearly vested with subject
matter jurisdiction pursuant to the APA, 5 U.S.C. §551 *et
seq.*, and the general federal question statute, 8 U.S.C.
§1331. To suggest otherwise would be to effectively permit
the government to escape any review of unreasonably delayed
agency actions. The Defendants' arguments in this regard
simply do not withstand the weight of scruntiny.

**III.  The Defendants are Not Entitled to Summary Judgment**

     In its last attempt to dismiss the case, the Plaintiff
moves for Summary Judgment.  In a motion for summary
judgment, the burden is upon the moving party to show that

based upon the pleadings, discovery and affidavits "that
there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law.
Fed. R.Civ. P. 56(vc).  The court must view the entire
record in light most hospitable to the non-moving party and
indulge all reasonable inferences in the party's favor.
O'Conner v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

        The only submission the government makes in support
of its argument is a self-serving "declaration" by one of
the Defendants, Denis Riordan, INS, Boston District
Director.  In his statement Director Riordan vaguely
declares that that sometime subsequent to the February 25,
2002 visa petition approval, "an issue has arisen as to
whether subject had the necessary work experience". He
further states that on March 10, 2005[7], INS took steps to
investigate the claim.  His statement, however, failed to
articulate the date on which the issue arose, thereby
making it impossible, at this time, to determine whether
INS' delays in the present case are reasonable.  Given the
fact that all reasonable inferences must be made in favor
of the non-moving party, it is reasonable to infer that the
issue arose in 2002 or 2003.  If this is the case INS would

---

[7] It is disturbing that the investigation only appears to have been commenced when the Plaintiff informed
him that it would seek mandamus relief in the matter.  See copy of the February 28, 2005 letter attached
hereto.

be hard-pressed to say a three-and-a-half year delay in taking to steps to investigate the "issue" of work experience is reasonable.[8]

Moreover, Dir. Riordan provides no explanation as to what "issue" arose.  To the extent that the Defendants argue that the delay is reasonable under the circumstances, the Plaintiff is entitled, through the discovery process, to ascertain exactly what the issue was and when it arose.

Because it is possible that the Plaintiff can demonstrate that the delay has in fact been unreasonable, Summary Judgment is inappropriate.[9]

<u>CONCLUSION</u>

Based on the foregoing, the Defendants' Motion to Dismiss or in the alternative for Summary Judgment must be denied.

---

[8] To the extent that the Government relied on <u>Bartolini v. Ashcroft</u>, 226 F.Supp.2d 350 (D.Conn.2002), the reliance is mistaken.  The decision in Bartolini was very fact specific.  It involved an applicant, whose own actions created an extremely complicated issue regarding the adjudication of this adjustment application.  It also appeared that once INS became aware of possible fraud it conducted an investigation within a reasonable time.  Under these circumstances, the court in <u>Bartolini</u> granted summary judgment in favor of the government.

[9] At best, the present case is not ripe for summary judgment.  The Plaintiff is entitled to seek information through the discovery requests, including, but not limited to, the deposition of Mr. Riordan, to ascertain the timing of the above-referenced events.

## REQUEST FOR ORAL ARGUMENT

Respectfully submitted,

The Plaintiffs
Marcio Jacob
By his Attorneys

/s/Susan E. Zak
_____
Susan E. Zak
BBO 568044
LAW OFFICE OF JOHN K.
DVORAK
P.O. Box 8788
Boston, MA 02114

## CERTIFICATE OF SERVICE

I,  Susan E. Zak , Attorney for the Plaintiffs hereby certify that on  August 5, 2005 I served a copy of the Plainttiffs' Opposition to Defendant's Motion to Dismiss, or, in the Alternative Summary Judgment via first-class mail  to:

Mark Quinlivan
U.S. Attorney General Office
United States Federal Court
1 Courthouse Way
Suite 9200
Boston, MA 02210

/s/ Susan E. Zak
_____
Susan E. Zak, Esq.
LAW OFFICE OF JOHN K. DVORAK,.
P.O. Box 8788
180 Canal Street, 4th Floor
Boston, MA 02114

# LAW OFFICES OF JOHN K. DVORAK, P.C.

_____

**ATTORNEY-AT-LAW**

_____

**180 Canal Street, 4ᵗʰ Floor, P.O. Box 8788 ● Bᴏsᴛᴏɴ, ᴍᴀ 02114  ●  (617) 723-4422 ● Fᴀx (617) 723-8305**

**John K. Dvorak**
**Christopher W. Drinan**
**Susan E. Zak**


February 28, 2005


VIA HAND-DELIVERY

Henry J. Hanley, District Counsel
U.S. Citizenship and Immigration Services
JFK Federal Building, Room 425
Boston, MA


RE:   Draft Complaint for Mandamus
     Marcio H. JACOB (A#95-440-858)

     Aldemir A. AYRES (A#95-910-720)
     Iracema O. ANASTACIO (A#95-873-897)
     Paula O. ANASTACIO (A#95-912-263)
     Matheus O. ANASTACIO (A#95-912-264)


Dear Attorney Hanley:

Please find enclosed two draft complaints that we intend to file with the United States District Court on **Friday, March 25, 2005** unless the above-referenced aliens' I-485 Applications are adjudicated. As detailed below, each of the applicant's I-485 Applications are being delayed because the hearing officer wanted to check into a speeding ticket incident. Their position is untenable as it has no legal justification and is just an excuse to further delay the processing of these cases.

Case No. 1   Marcio H. Jacob (A#95-440-858)
Mr. Jacob's I-485 Application has been pending since April 13, 2002. . Officer Tiberi interviewed them on October 21, 2004. At the conclusion of interview, Officer Tiberi stated she

needed more information on a motor vehicle citation.  Although counsel argued that it was unnecessary and irrelevant she refused to decide the case at that time.  Although she never issued an I-72, counsel sent a copy of the motor vehicle citation to Supervisor Hayden to ensure the matter would be adjudicated.

Case No. 2  Aldemir A. AYRES (A#95-910-720)
          Iracema O. ANASTACIO (A#95-873-897)
          Paula O. ANASTACIO (A#95-912-263)
          Matheus O. ANASTACIO (A#95-912-264)

The above-referenced individuals file has been pending since July 29, 2002.  Officer Putnam interviewed the family on October 27, 2004.   During the course of the interview, Mr. Ayres (the principal alien) stated that he went to court for a speeding ticket violation.   At the conclusion of the interview, Officer Putnam stated that he would not decide the entire family's application because he wanted to check into the speeding ticket incident.  When counsel asked whether he was going to issue an I-72, he replied in the negative stated that "he would look into the matter himself."

It is now nearly five months later and we have received no word from Officer Putnam regarding the status of the case.   We have send request for adjudication on the matter (see Exhibit   of the Complaint) , but have failed to receive any response whatsoever.

Based on foregoing, we believe that the processing of the above-referenced complaints are unreasonable.   Accordingly we are left with no alternative to file the enclosed Complaint, which seeks attorney's fees and costs pursuant to the Equal Justice Act, if we do not hear from you by **Friday, March 25, 2005**.

If you have any questions regarding this matter, please do not hesitate to contact me at (617) 723-7766 or szak@johnkdvorak.com.

                    Very truly yours,



                    Susan E. Zak


5hanleymandamus3.4101.doc